**Affirmed and Opinion Filed February 13, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01277-CV

## IN THE INTEREST OF F.A.B.

### On Appeal from the 304th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 11-00539-W

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

Mother appeals the termination of her parental rights. In a single issue, Mother argues the evidence is legally and factually insufficient to support the jury's finding that termination of her parental rights is in the best interest of her child, F.A.B. We affirm the trial court's judgment.

Mother began using crystal methamphetamine when she was twenty-one years old, and "[t]hat continued for a number of months, somewhat daily." Mother met F.A.B.'s father, J.B., and Mother stopped using drugs when she found out she was pregnant with F.A.B. After F.A.B. was born in April 2006, Mother took care of F.A.B. and two of J.B.'s other children. A friend of Mother's showed up "out of nowhere" one day and brought methamphetamine, and Mother began using drugs again.

On March 8, 2011, the Texas Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision of F.A.B. by Mother and J.B. The report stated Mother was brought to Parkland emergency psychiatric hospital due to her "disorganized and psychiatric behaviors which were placing [F.A.B.] at risk of harm." On April 12, 2011, Mother admitted in an interview that she used methamphetamine with J.B. in the presence of F.A.B. F.A.B. was placed in the care of her maternal grandparents and, later, a foster parent, C.B.

Mother successfully completed her required services, and the trial court ordered that F.A.B. be returned to Mother at the earlier of the end of school or June 8, 2012. On June 29, 2012, the trial court signed an order appointing Mother F.A.B.'s permanent managing conservator, terminating J.B.'s parental rights, and enjoining J.B. from having any contact with F.A.B.

On March 20, 2013, Irving police officer Benny Bazely stopped Mother as part of a traffic stop. Mother's passenger in the car was J.B. During the stop, Bazely found methamphetamine in Mother's pocket, and he arrested her on a charge of possession of methamphetamine of less than one gram. J.B. was arrested on an outstanding felony warrant. At Mother's request, police contacted a CPS worker to pick up F.A.B. from school.

On March 21, 2013, the Department filed a motion seeking to have the Department appointed F.A.B.'s managing conservator and to terminate Mother's parental rights. The trial court appointed the Department as F.A.B.'s temporary managing conservator. In a subsequent order, the trial court required Mother to participate in psychological evaluation; counseling, including domestic violence treatment; drug/alcohol assessment; and random drug and alcohol urinalysis. The order also provided for one hour of visitation with F.A.B. after a therapist

recommended visitation. The injunction prohibiting contact between F.A.B. and J.B. was continued.

Mother said she "ha[d] a job and she want[ed] to pay for her own providers" for services mandated by the trial court's order. Mother provided the Department one document purporting to show she had seen an individual counselor, but the document said "x-number of sessions" and there were "a lot of places that should have been filled in that there was nothing there." Mother did not provide a phone number for her individual counselor. Mother provided nothing to show she had submitted to a psychological evaluation, undergone domestic counseling, attended a drug and alcohol assessment, or received drug treatment. Although F.A.B.'s therapist recommended visitation with Mother and Mother could have visited more than once, Mother visited F.A.B. only once.

At trial, Mother admitted she was arrested on March 20, 2013, and J.B. was in the front passenger seat of her car at the time. Mother testified J.B. had been staying with her "for a few days" at the time of her arrest. Mother admitted that, after she had gotten F.A.B. back the first time, J.B. "came back" and Mother started using drugs again. Mother continued using drugs after "the CPS case was reopened." However, Mother testified, she stopped using "alcohol and illegal substances or mind-altering substances" on November 21, 2013. Mother testified she went to Mexico and stayed from December 2013 to February 2014. In Mexico, Mother saw a psychiatrist and a neurologist and was prescribed medications which she continued to take when she returned to the United States. Mother testified she worked between thirty and thirty-nine hours per week at Jackson's Home and Gardens, and she had worked there approximately three months at the time of trial. Mother testified she planned to move into her mother's house with F.A.B.

The jury found that Mother's parental rights to F.A.B. should be terminated and that termination was in F.A.B.'s best interest. On September 18, 2014, the trial court signed an order terminating Mother's parental rights. This appeal followed.

In a single issue, Mother argues the evidence is legally and factually insufficient to support the jury's finding that termination of her parental rights is in the best interest of F.A.B. Specifically, Mother argues that, based on the entire record, a reasonable fact finder could not form a firm conviction or belief that termination of Mother's parental rights was in F.A.B.'s best interest.

A trial court may terminate the parent-child relationship of the fact finder determines (1) a parent committed one or more of the enumerated statutory acts in section 161.001 of the family code and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014). Because the termination of parental rights implicates fundamental interests, a higher standard of proof – clear and convincing evidence – is required at trial. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). A heightened standard of appellate review in parental termination cases is similarly warranted. *Id.* In a legal sufficiency review, we examine the evidence in the light most favorable to the finding of best interest, assuming the factfinder resolved disputed facts in favor of the finding and disregarded all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

A proper factual sufficiency review requires the court of appeals to determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re A.B.*, 437 S.W.3d at 502. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* at 503 (quoting *In re J.F.C.*, 96 S.W.3d at 266).

And in making this determination, the reviewing court must undertake an exacting review of the entire record with a healthy regard for the constitutional interests at stake. *Id.* However, while parental rights are of a constitutional magnitude, they are not absolute. *Id.* Consequently, despite the heightened standard of review, the court of appeals must nevertheless still provide due deference to the decisions of the factfinder who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.*

A judicial determination of the best interest of a child is not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such harm. *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied). Rather, "best interest" is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion. *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding) (plurality op.); *In re D.W.*, 445 S.W.3d at 925. In reviewing a jury's best interest finding, we consider several nonexclusive factors, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the person seeking custody; (5) the programs available to assist the person seeking custody in promoting the best interest of the child; (6) plans for the child by the person seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

These factors are not exhaustive. *In re D.W.*, 445 S.W.3d at 925. Some of the listed factors may be inapplicable to a case and other factors not on the list may also be considered when appropriate. *Id.* The absence of evidence about some of the factors would not preclude a

fact finder from reasonably forming a strong conviction or belief that termination is in the best interest of the child, particularly if the evidence was undisputed that the parental relationship endangered the safety of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence of one of the predicate acts for termination under section 161.001(1) may also be relevant to determining the best interest of the child. *Id.*

While there is a strong presumption that a child's best interest is served by maintaining the parent-child relationship, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE ANN. § 153.131(b) (West 2014)), the prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). The statutory factors to be considered in determining the best interest of the child are (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, or other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable

period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b).

In answering the best interest questions in the jury charge, the jury was instructed to consider both the statutory and *Holley* factors. On appeal, Mother focuses her sufficiency argument solely on five of the *Holley* factors. However, because the record contains relevant evidence regarding the remaining factors, we will consider them in our analysis.

The first *Holley* factor is the desire of the child. Here, Mother admitted F.A.B. said "at the last visit" that she wanted to live with her foster mother, C.B. However, Mother testified F.A.B. made that statement "After 13 months without seeing her." Lola McGee, F.A.B.'s counselor, testified she had counseled F.A.B. since October 2011. McGee testified F.A.B. was a "happy child" when she had lived with C.B. the first time, but she experienced a "gradual change" after she was returned to Mother. McGee testified F.A.B. was "grieving the separation from her foster mother and wanted to be placed back with C.B. "about two months after being with her mother." When F.A.B. was removed from Mother the second time, F.A.B. seemed to be "a little bit more mature than any average child her age." After the second removal, F.A.B. was anxious and having nightmares. F.A.B. was fearful that someone was going to take her away from C.B. F.A.B. was "very concerned and worried about her mother. But at the same time she didn't want to live with her. She just wanted to make sure she was okay." McGee testified F.A.B. consistently stated since July 2012 that she wanted to be with her foster mother, C.B. We conclude this factor weighs in favor of termination of Mother's parental rights.

The second and fourth *Holley* factors are related. The second factor considers the child's current and future physical and emotional needs, while the fourth factor considers the parental abilities of the person seeking custody. The need for stability and permanence is an important

consideration for a child's present and future physical and emotional needs. *In re D.W.*, 445 S.W.3d at 926. Mother argues her employment and plan to move in with her supportive mother indicated F.A.B.'s physical and emotional needs would be met now and in the future.

Robin Smith, F.A.B.'s Court Appointed Special Advocate, testified she picked up F.A.B. from school on the day Mother was arrested. F.A.B. said J.B. had been living with F.A.B. and Mother. Smith told F.A.B. Mother had "made a bad decision, and [F.A.B.] came just really unglued." F.A.B. was "very angry and very sad" about Mother.

F.A.B. was previously removed from Mother's custody for more than a year before being returned to Mother's care in June 2012. The second removal came after Mother was living with J.B. in violation of a court order and was arrested for drug possession. Mother admitted using drugs after the second removal. Following the second removal, Mother attended only one visit with F.A.B. and failed to complete any other court-ordered services. Significantly, Mother had completed all required services following the first removal, and F.A.B. was returned to her. Thus, Mother knew what actions were required of her to obtain F.A.B.'s return, but Mother took no such action following the second removal. Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *Id.* at 928. Further, the jury could infer from Mother's past conduct endangering F.A.B.'s welfare that similar conduct would recur if F.A.B. was returned to her care. *Id.* We conclude these two factors weigh in favor of termination of Mother's parental rights.

The third *Holley* factor considers the current and future emotional and physical danger to the child. As discussed, Mother began using drugs again and allowed J.B. to move back in with her and F.A.B. when a court order prohibited contact between J.B. and F.A.B. Mother testified she had been sober since November 21, 2013. However, Mother failed to perform court-ordered services following the second removal, including a psychological evaluation, a drug and alcohol

assessment, and drug treatment. We conclude this factor weighs in favor of termination of Mother's parental rights.

We consider the fourth *Holley* factor, the parental abilities of the person seeking custody, and the seventh *Holley* factor, the stability of the home or proposed placement, together. As already discussed, Mother visited F.A.B. only once following the second removal, and Mother failed to complete court-ordered services. F.A.B. was twice removed from Mother, and Mother did almost nothing following the second removal to demonstrate a commitment to improving her parenting abilities or providing a stable home for F.A.B. In contrast, C.B. planned to adopt F.A.B. if Mother's parental rights were terminated, and the testimony before the jury showed C.B. could and did provide F.A.B. with the stable environment she needed. We conclude these factors weigh in favor of termination of Mother's parental rights.

Mother does not challenge the sufficiency of the evidence to establish the other *Holley* factors weighed in favor of the termination of her parental rights. We recognize that termination should not be used as a way to reallocate a child to "better" or more prosperous parents. *Id.* at 932. In this case, however, the record as a whole establishes that Mother has continued to make choices that do not put F.A.B.'s safety and welfare first. *Id.* We conclude the jury could have reasonably determined that Mother could not reliably provide for F.A.B.'s emotional and physical needs and posed a potential danger to F.A.B.'s emotional and physical well-being. The jury also could have reasonably found that Mother's history of instability overshadowed and cast doubt on her ability to consistently use good parenting skills. *Id.* Considering all the *Holley* and statutory best interest factors and the record as a whole, we conclude clear and convincing evidence supports the jury's findings that termination of Mother's parental rights was in F.A.B.'s best interest. Accordingly, we resolve Mother's sole issue against her.

We affirm the trial court's judgment.

141277F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF F.A.B.

No. 05-14-01277-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 11-00539-W.
Opinion delivered by Justice Bridges. Justices Lang-Miers and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of February, 2015.